THE NATIONAL PARK BANK OF NEW YORK, Appellant, *v.* THE SEABOARD BANK, Respondent.

The title to commercial paper received by a bank for collection and forwarded to its correspondent bank in the usual course of business, without any express agreement in reference thereto, does not vest in such correspondent, even if it has remitted on general account in anticipation of collections.

When a raised draft so forwarded is presented by the correspondent bank, as agent, and the drawee, through mistake, pays it, the collecting bank cannot be required to repay, if it has paid over to its principal before notice of the mistake.

When payment is made upon general account without direction as to its application the law applies it to the oldest items.

A draft for $8 drawn on the plaintiff, which had been raised to $1,800, was delivered to the Eldred Bank for collection; that bank indorsed it "for collection for account of the Eldred Bank," and forwarded it to defendant, its correspondent bank. The latter, on receipt, credited the amount of the draft as raised to the Eldred Bank, presented it on July 16, 1885, and plaintiff, through a mistake of fact, paid it. All the banks acted in good faith; the alteration was not discovered until August 15. By the established course of business between defendant and the Eldred Bank the former did not become responsible for any draft so forwarded for collection, but was reimbursed by the latter in case of non-payment if it had made any credits, payments or remittances in anticipation of collection. At the time of the discovery the aggregate of the debits in defendant's account with the Eldred Bank exceeded the aggregate of credits by more than the $1,800, but said balance arose wholly from transactions subsequent to the date when said draft was paid and the entire amount to the credit of the Eldred Bank when the draft was paid, including its proceeds, had been drawn out before the alteration was discovered. In an action to recover the amount so paid, less the face of the draft as drawn, the trial court found that the sum paid by plaintiff had, prior to August fifteenth, been paid over by defendant to the Eldred Bank; and that defendant never had any title to or interest in the draft. *Held,* that the said findings of fact were justified by the evidence and were conclusive here; and that the complaint was properly dismissed.

*Met. Nat. Bk.* v. *Loyd* (90 N. Y. 530) distinguished.
Reported below, 44 N. Y. 49.

(Argued March 8, 1889; decided March 19, 1889.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon

an order made March 14, 1887, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial without a jury.

On the 7th of July, 1885, the First National Bank of Wallingford, Connecticut, drew on the plaintiff a draft in the usual form, for the sum of $8, payable to the order of one Frank Saxton, and delivered the same to him. Subsequently, but prior to July 15, 1885, said draft was raised from $8 to $1,800, and on that day said Saxton indorsed it in blank and presented it to the Eldred Bank, of Eldred, Pennsylvania, with the request that it should collect the same for him.

The Eldred Bank received said draft for collection only, giving back a receipt to that effect; indorsed it to the order of defendant's cashier " for collection ' for account of the Eldred Bank, Eldred, Pa.," and at once forwarded it for collection to the defendant, its New York correspondent, which received it on the morning of July 16, 1885, and forthwith notified the Eldred Bank, by mail, that it had been received and placed to its credit. On the next day the defendant presented it, through the New York Clearing House, to the plaintiff for payment, and the plaintiff thereupon, through a mistake of fact, paid it to the defendant as a draft for $1800. The change in said draft was unknown to each of said banks until about the 15th day of August, 1885, and all of them acted in good faith in the premises.

It was the custom of the defendant to notify the Eldred Bank immediately of a failure to collect any of its checks or drafts or of anything wrong in regard to them. The Eldred Bank waited until July 25, 1885, in order to be sure that everything was all right, when, not having heard anything to the contrary, it, became satisfied that the draft was genuine in all respects, and paid over the proceeds thereof, less charges for collection, to said Saxton. According to the established course of business between the defendant and the Eldred Bank, the former did not become responsible for said draft, or for any draft, forwarded to it for collection by the cashier, but " was reimbursed by said Eldred Bank in case of the non-

payment of any such draft    *    *    *    if the defendant had made any credits, payments or remittances, in anticipation of the collection of the same or on account thereof."

The defendant, upon receipt of said draft, credited the amount thereof to the Eldred Bank in the only account that it kept with the latter. Said account was balanced on July 21, 1885, and the balance carried to the credit of the same account, which remained open until after August fifteenth, but by that time the aggregate of the debits therein by the defendant to the Eldred Bank, since the last balancing thereof. including the balance then existing in favor of the Eldred Bank, exceeded the aggregate of the credits by considerably more than the sum of $1,800, with interest thereon from July 17, 1885.

The plaintiff first learned that the draft had been altered on the 15th of August, 1885, when it notified the defendant of the fact and requested repayment of the difference between said sums, with interest, which the defendant refused, as it had already paid over the money to the Eldred Bank, which in turn had paid it to Saxton. At this time the balance to the credit of the Eldred Bank on the books of the defendant exceeded the amount of said draft, but said balance arose wholly from collections and transactions subsequent to the date when said draft was paid.

The plaintiff brought this action to recover from the defendant the difference between the genuine and the altered draft.

The justice before whom the cause was tried without a jury, found the foregoing facts, and also found specifically " that said sum of $1,800 and all other sums of money in the possession of or under the control of the defendant on July 17, 1885, and on July 25, 1885, belonging to or to the credit of said Eldred Bank, had been, prior to August 15, 1885, the date of the aforesaid notice, paid over by the defendant to said Eldred Bank; that the defendant never had any title, ownership, interest or property in or to said check or draft, or any part thereof, and never assumed any title, ownership, interest or property in the same."

Said justice found, as a conclusion of law, that the complaint should be dismissed upon the merits.

*Francis C. Barlow* for appellant.   When the defendant collected the draft in question from the plaintiff, on July 17, 1885, the defendant was the owner of it.   (*Met. Nat. Bk.* v. *Loyd*, 90 N. Y. 530.)   The draft ceased to be the specific property of the Eldred Bank, and the latter became a creditor of the defendant for the amount, and the defendant became the owner of the paper.   (*Met. Nat. Bk.* v. *Lloyd*, 90 N. Y. 530, 534, 535 ; 25 Hun, 101 ; *Cragie* v. *Hadley*, 99 N. Y. 133, 134 ; *St. Louis* v. *Johnson*, 37 Fed. Rep. 243 ; *Sweeney* v. *Easter*, 1 Wall. 166 ; Morse on Banking [3d ed.] §§ 565, 575 ; *Clark* v. *Mer. Bk.*, 2 N. Y. 380.)   When an agent has in his hands more than the amount mispaid by him, he can repay it and make himself whole by merely charging the amount against his principal in account. (*Buller* v. *Harrison*, 1 Cowp. 565 ; *Mowatt* v. *McLelan*, 1 Wend. 178 ; *Cox* v. *Prentiss*, 3 M. & S. 345.)   When neither creditor nor debtor make any application of a payment and the matter comes into court, then the court will make such application of the payment as equity and justice require.   (*Bank* v. *Webb*, 94 N. Y. 472 ; *Jones* v. *Benedict*, 83 id. 79, 87 ; *In re Hallett*, L. R., 13 Ch. Div. 696 ; *Hall* v. *Otis*, 77 Me. 122, 124, 125 ; *Frye* v. *Lockwood*, 4 Cow. 457.)   Money paid under a mistake of fact can be recovered back, and the mere fact that the party receiving it has changed his condition upon the faith of the payment is no defense to the action.   (*Kingston Bk.* v. *Eltynge*, 40 N. Y. 399 ; *Mayer* v. *Mayor, etc.*, 2 Hun, 306, 307 ; *Bank* v. *Bank*, 55 N. Y. 213, 216 ; *Allen* v. *Bank*, 59 id. 19 ; *Price* v. *Neal*, 3 Burr. 1355 ; *Nat. Bk.* v. *Nat. Mec. Bk.*, 55 N. Y. 213 ; *Nat. Park Bk.* v. *Fourth Nat. Bk.*, 7 Abb. [N. S.] 138, 140–152 ; *Bank* v. *Banks*, 46 N.Y. 77, 81 ; *Nat. Park Bk.* v. *Ninth Nat. Bk.*, 55 Barb. 87, 90, 124.)   Where alterations have been made in the body of an instrument the drawee who has paid can recover, and the drawee who has certified the paper cannot be compelled to pay it.   (*Marine Nat. Bk.* v. *Nat. City Bk.*, 59 N. Y. 67,

77; *Canal Bk.* v. *Bk. of Albany*, 1 Hill, 290; *Bk. of Commerce* v. *Union Bk.*, 3 N. Y. 234, 236; *White* v. *Continental Bk.*, 64 id. 320, 321; *Clews* v. *Bk. of N. Y.*, 89 id. 422; *Goddard* v. *Mer. Bk.*, 4 id. 147, 151; *Markle* v. *Hatfield*, 2 Johns. 462; *Mer. Bk.* v. *McIntyre*, 3 Sand. 434, 435; *Jones* v. *Ryde*, 5 Taunt. 495.) In the case at bar the plaintiff was not guilty of any negligence. (*Marine Bk.* v. *City Bk.*, 59 N. Y. 67; *Corn Exchange Bk.* v. *Nassau Bk.*, 91 id. 79; *White* v. *Continental Nat. Bk.*, 64 id. 320, 321; *Bk. of Commerce* v. *Union Bk.*, 3 id. 236.) A person who collects a draft asserts its genuineness, and is bound to repay the amount in such case as this whether he indorses it or not. (*White* v. *Continental Nat. Bk.*, 64 N. Y. 316, 320; *S. V. Bk.* v. *Loomis*, 85 id. 211; *Jones* v. *Ryde*, 5 Taunt. 488, 493; *Bk. of Commerce* v. *Union Bk.*, 3 N. Y. 237; *Corn Exchange Bk.* v. *Nassau Bk.*, 91 id. 174; *Herrick* v. *Whitney*, 15 Johns. 240; Story on Prom. Notes, §§ 117, 118.) But even if an indorsement were necessary to enable us to recover, it would be enough for us that the defendant indorsed the draft, as we are only suing them. The stamp "paid" was an indorsement. (Story on Prom. Notes, § 121; *Merchants' Bk.* v. *Spicer*, 6 Wend. 443; *Stoddard* v. *Hart*, 23 N. Y. 562; 1 Story's Eq. Jur. § 499; *Bank* v. *Hall*, 83 N. Y. 338, 345.) The defendant and the Eldred Bank having indorsed the draft, thereby guaranteed its genuineness. (*White* v. *Bank*, 64 N. Y. 320; *Turnbull* v. *Bowyer*, 40 id. 460; *Erwin* v. *Downs*, 15 id. 575.)

*Alfred Taylor* for respondent. Both the defendant and the Eldred Bank, its correspondent and principal, were merely collecting agents, and neither ever acquired any ownership in the draft. (1 Daniel on Negotiable Instruments [2d ed.] 552; *Sweeney* v. *Easter*, 1 Wall. 166; *Walton* v. *Shelly*, 1 Term, 296; *Dickerson* v. *Wason*, 47 N. Y. 439.) An agent who receives money for his principal is, after passing over the same to the principal, absolved from liability. (*Buller* v. *Harrison*, 1 Cowp. 566; *Mowatt* v. *McLelan*, 1 Wend. 174;

*Costigan* v. *Newnand*, 12 Barb. 455; *Lafarge* v. *Kneeland*, 7 Cow. 460.)    The defendant, having before notice of the raising of the draft paid over the proceeds to its principal, is absolved from liability.    (1 Wait's Actions and Defenses, 178; 7 id. 420; *Sheppard* v. *Steele*, 43 N. Y. 52; *U. S.* v. *Kirkpatrick*, 9 Wheat. 720; *Walden* v. *Davison*, 11 Wend. 65; *Allen* v. *Culver*, 3 Denio, 293; *Dow* v. *Morewood*, 10 Barb. 189; *Commercial Bk.* v. *Union Bk.*, 11 N. Y. 214; *Adams Co.* v. *N. S. & L. Bk.*, 9 N. Y. S. R. 297; *Harding* v. *Tifft*, 75 N. Y. 464; *Bixby* v. *Drexel*, 56 How. 418.)    Irrespective of the question whether or not the defendant paid over the proceeds of the draft, no recovery can be had, since it is conceded that the defendant's principal, the Eldred Bank, had paid over the proceeds to Saxton.    (*Nat. Bk. of Commerce* v. *Nat. Mechanics' Banking Assn.*, 55 N. Y. 21.)    The indorsement of the Eldred Bank "for collection," is a restrictive indorsement and does not bind the indorser to the rules and liabilities of a general indorser.    Under such a restrictive indorsement the indorser is competent to prove that he is not the owner of the instrument, and did not mean to give title to it or to its proceeds when collected.    (1 Daniel on Negotiable Instruments [2d ed.] 552; *Sweeney* v. *Easter*, 1 Wall. 166.)

VANN, J.  When the draft in question was paid by the plaintiff under a mistake of fact, the defendant either owned it or simply held it for collection as the agent of the Eldred Bank.    If the defendant had then owned the draft it would have become liable, upon discovery of the facts, to refund the amount mispaid, provided its condition had not in the meantime changed so that this would be unjust.    (*Nat. Bk. of Commerce* v. *Nat. Mechanics' Banking Assn.*, 55 N. Y. 211; *White* v. *Continental Nat. Bk.*, 64 id. 316.)    If, however, the defendant did not then own the draft, but merely presented it for payment as the agent of another bank, it could not be required to repay, provided it had paid over to its principal before notice of the mistake.    (*La Farge* v. *Kneeland*,

7 Cow. 460; *Mowatt* v. *McLelan*, 1 Wend. 173; *Herrick* v. *Gallagher*, 60 Barb. 566; Story on Agency, § 300.)

The plaintiff claimed that the entry made by the defendant on its books to the credit of the Eldred Bank, upon the receipt of the draft, proved that it belonged to the defendant, while the defendant claimed that the restrictive indorsement of the draft by the Eldred Bank prevented any change of title and simply created an agency for collection. A question of fact thus arose as to the intention of the parties to the transaction, to be determined by considering their words and acts, their course of business and all of the surrounding circumstances. We think that the decision of this question in favor of the defendant by the trial court, acting in the place of a jury, is conclusive upon us. Moreover, it seems to be settled that the title to commercial paper received for collection by a bank and forwarded to its correspondent in the usual course of business, without any express agreement in reference thereto, does not vest in such correspondent, even if it has remitted upon the general account in anticipation of collections. (*Dickerson* v. *Wason*, 47 N. Y. 439.) Title passes only by a contract to that effect, to be either expressly proved or inferred from an unequivocal course of dealing. (*Scott* v. *Ocean Bank*, 23 N. Y. 289.)

This would involve in the case at bar an agreement on the part of the defendant to become absolutely responsible to the Eldred Bank for the amount of the draft, whether it was collected or not, without any right to reimbursement for advances. (Id.) This was not the agreement of the parties to the transaction in question, either as found by the trial court or as appears from the undisputed evidence. In the case of *Metropolitan National Bank* v. *Loyd* (90 N. Y. 530), relied upon by the plaintiff, the referee found that the owner of a check endorsed it in blank and deposited it in a bank, which received it as a deposit of money, entered the amount as cash to his credit in his pass-book and returned the book to him. It was held that under those circumstances the property in the check passed from the customer and vested in the bank. No other

result could follow a transfer, absolute in form and in fact, by one party and its receipt as cash by the other.

The learned counsel for the plaintiff concedes that an agent who has received money paid by mistake cannot be compelled to repay it where he has paid it over to his principal without notice, but he contends that as the specific proceeds of this draft were not paid over, the rule has no application. The trial court found, and the evidence clearly shows, that the proceeds of the draft, including the entire amount that the Eldred Bank had to its credit with the defendant when the draft was paid, had been drawn out at least two weeks before the alteration of the draft was discovered.

Where a payment is made upon general account with no direction as to its application, the law applies it to the oldest items. That is, the first debits are to be charged against the first credits and the debt paid according to priority of time. (*Sheppard* v. *Steele*, 43 N. Y. 52 ; *Allen* v. *Culver*, 3 Denio, 284 ; *Webb* v. *Dickinson*, 11 Wend. 65.)

In *Allen* v. *Culver* (*surpra*, 293), the court said : " In the case of a running account between parties, where there are various items of debit on one side and of credit on the other, occurring at different times, and no special appropriation of payments, constituting the credits, has been made by either party, the successive payments and credits are to be applied in discharge of the items of debit antecedently due in the order of time in which they stand in the account. In other words, each item of payment or credit is applied in extinguishment of the earliest items of debt until it is exhausted."

We think that this rule should be applied to the case under consideration and that the amount received upon the draft had been paid over by the defendant to the Eldred Bank before it was notified that the draft had been altered.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.