WELLS, FARGO & CO. *v.* UNITED STATES.

*(Circuit Court, N. D. California. January 31, 1891.)*

CLAIMS AGAINST THE UNITED STATES—RAISED PENSION CHECKS.
    Where a pension check drawn by mistake for $1,280.20, instead of $18, is indorsed by the payee to a bank, and by that bank indorsed for collection to another, which indorses it to the assistant treasurer, who pays it, the money cannot be recovered from the collecting bank which has paid it over to its principal, the forwarding bank; and, where the assistant treasurer retains out of money due the collecting bank from the United States the amount of the check, such bank may recover it from the United States.

At Law.   Findings of fact.

This cause having come on regularly before the court, without the intervention of a jury, a jury having been duly waived by stipulation in writing of the parties, filed with the clerk of this court, Mr. E. S. Pillsbury appearing as counsel for plaintiff, and John T. Carey, United States district attorney, as counsel for the defendant; and evidence oral and documentary having been introduced by the respective parties, and the cause having been submitted to the court for decision, and the court having duly considered the pleadings and the evidence, finds the following facts:

### SPECIFIC FINDINGS OF FACTS.

(1) That at all the times hereinafter mentioned plaintiff was and now is a corporation duly organized, existing and doing business as an express company, and engaged as such in the carriage of gold, silver and other chattels from place to place in the United States, and has its office and principal place of business at the city and county of San Francisco, state of California.

(2) That prior to December 30, A. D. 1887, the United States became indebted to plaintiff in the sum of $1,995.75 for services theretofore rendered by it as an express company, and on said December 30th adjusted its claim for that amount, and issued a draft, No. 12,084, for said sum to said company on the U. S. treasury, payable to its order.   That on January 6, 1888, plaintiff, by one of its employes, presented said draft, duly indorsed, at the U. S. treasury in San Franciso for payment; that the assistant U. S. treasuror at San Francisco, at that time was Samuel H. Brooks, who then received and retained said draft, and in payment thereof handed over to the said employe presenting the same the sum of $715.55 in cash, together with a certain check drawn December 10, 1886, by T. H. Allen, U. S. pension agent at San Francisco, to the order of one Henry P. Metcalf, for the sum of $1,280.20, as expressed on the face of said check when received by plaintiff and paid by said assistant treasurer, and which check and the payment thereof by said assistant treasurer is hereinafter more particularly referred to and described. Said employe declined to receive said check, and demanded full payment of the draft in cash; the said assistant treasurer declined to make payment in any other manner, and arbitrarily held onto the draft, and told said employe that the officers of the company would understand his action; thereupon, the employe went away with said check and the said sum of $715.55, and reported the transaction to the president of the plaintiff, who thereupon consulted with its attorneys, and forthwith sent said employe back to the said assistant treasurer, with instructions to tender back to him the said check and said sum of $715.55 cash, and demand the return of said draft in its favor for $1,995.75, or full payment thereof, which was done by said employe, but said assistant treasurer still declined to give up said draft or pay it in any different way; thereupon the plaintiff brought this action to recover the amount unpaid on said draft, to-wit, $1,280.20.

(3) Touching the check so turned in by the said assistant treasurer in payment of said draft to the extent of $1,280.20, and hereinbefore referred to, the court finds the facts to be, that on December 22, A. D. 1886, plaintiff received said check for collection from the First National Bank of Denver, Colo., said check then calling on its face for $1,280.20, in figures and writing, and apparently regular in form, and was likewise duly indorsed by its payee, Henry P. Metcalf, to said bank of Denver, and bore the further indorsement from said bank to plaintiff, "Pay Wells, Fargo & Co.'s Bank, San Francisco, or order, for account First National Bank of Denver, G. E. Ross, Cashier;" and thereupon plaintiff indorsed thereon, "Wells, Fargo & Co., by H. Wadsworth,

Treas.;" and on said 22d day of December, 1886, presented it for payment to said assistant treasurer at San Francisco, who then accepted said check and paid to plaintiff $1,280.20 thereon, which said sum plaintiff received and immediately paid over, in the usual course of business, to its principal, said First National Bank of Denver, from which it was received for the purposes of collection only. Thereafter, and about January 12, 1887, the said assistant treasurer first informed plaintiff that said check had been repudiated by the maker, said U. S. pension agent, who claimed that it had been issued for the sum of $18 only. Plaintiff then informed said treasurer, which was true, that the check had been collected in good faith, and the proceeds long since paid over to said Denver Bank, its principal, but suggested to said treasurer to sue it for the amount of said check, so that if its liability was established it might have recourse upon its principal, but said assistant treasurer declined to do this, and on January 6, 1888, being more than one year after the payment of said check, resorted for his reimbursement thereof from plaintiff to the means of collection hereinbefore stated. When so requested to sue the plaintiff, said assistant treasurer Brooks stated to the cashier of the plaintiff that the check had, in his opinion, been made out by mistake in the office of the pension agent, for $1,280.20, and that if plaintiff sued said pension agent, it would, in his opinion, have no difficulty in establishing that fact. Said Brooks then also further stated to said cashier that said check had been received and paid at the treasury department as a genuine check for $1,280.20, and that nothing upon its face was then discovered to excite any suspicion concerning the same in any particular. It further appeared upon the trial that said Brooks turned this check over to Pension Agent Allen on January 21, 1887, and that it was thereafter out of the possession of said treasurer for some months, during which times it was discolored and materially changed in appearance; that it finally came back to said Brooks, and remained in his possession as such treasurer for many months, until forced upon the plaintiff on January 6, 1888, as before stated. The court finds from the testimony and expert evidence given upon the trial, and also from its own examination of said check, that it was issued originally either in blank as to amount, or for the sum of $1,280.20; that there are dollar-mark and figures $1,280.20 in the corner of said check, which figures have never been in any manner altered or tampered with, and there are also the words "Twelve hundred and eighty dollars" in writing upon the face of said check, which have never been erased or raised, so that said check was either issued in blank as to amount, with the name Henry P. Metcalf written therein as payee, and in terms payable to his order, or it was issued by mistake and in advertence, for the sum of $1,280.20, instead of $18, the amount due the payee at that time; that it was not a raised check when paid; that there was nothing upon the face of said check to excite the suspicion or attract the attention of the plaintiff or of the assistant U. S. treasurer at San Francisco as to its genuineness, and the same was then collected in good faith by the plaintiff; said check was drawn upon a regular engraved blank, furnished the said pension agent for that purpose by the U. S. government; it bore the number 93,339, apparently as one of regular series; at the left end were the words "United States Agency for Paying Pensions," with a design bearing the words "Department of the Interior;" at the top, and to the right of it were the words, in prominent letters, "Assistant Treasurer of the United States" engraved upon the paper, and below, "San Francisco, Cal.," in large red printed letters, and below these, "San Francisco, Cal., Dec. 10, 1886," in smaller letters and figures, the date "Dec. 10, 1886," evidently being done by a stamp, and the rest being printed; then follows in print, "Pay to the order of," and after this the name "Henry P. Metcalf," and below this name in writing "Twelve hundred & eighty 20-100," the "100" being in print and the word "Dollars" in print

following; then the name "T. H. Allen" over the words "U. S. Pension Agent," also in print, and the "$" printed near the left corner, followed by the figures "1,280.20." When presented upon the trial said check also bore upon its face the words "Paid Dec. 22, 1886, Ass't Treasurer U. S., San Francisco," in the usual form of a round pay stamp. This check was signed in blank by the pension agent, and by him left to a clerk in his office to be filled in and issued to the pensioner.

(4) That no part of said sum of $1,280.20 has ever been paid to the plaintiff.

*E. S. Pillsbury*, for plaintiff.

*John T. Carey*, U. S. Dist. Atty.

Before SAWYER, Circuit Judge.

SAWYER, J. The court is of the opinion that the plaintiff in this action is entitled to recover, which opinion is based upon the foregoing specific findings of the facts therein and the following conclusions upon all the questions of law involved in the case, that is to say: When the United States become parties to commercial paper, they incur all the responsibilities of private persons under the same circumstances, and are bound in any court, to whose jurisdiction they submit, by the same principles that govern individuals in their relations to such paper. The check of the United States pension agent, in question, was commercial paper; it is the duty of the pension agent, under the law in such cases provided, to draw his check on the proper assistant treasurer or other designated depositary of the United States in favor of the pensioner, payable to his order, and transmit the same by mail, directed to the address of the pensioner entitled thereto; he is the authorized agent of the United States for that purpose; it is likewise the duty of such assistant treasurer or other designated depositary to pay the same; it is the check of the United States, and a negotiable instrument. When the drawer has made his check in such a careless or incomplete manner that a material alteration may be readily accomplished without leaving a perceptible mark, or giving the instrument a suspicious appearance, he himself prepares the way for a fraud, which, if committed, he must suffer for, and not the innocent person into whose hands the paper may come in the regular course of business. A negotiable instrument so indorsed as to show to the payor thereof that as to the person presenting the same for payment it is in his hands for collection only, is notice to such payor that the indorsee is the agent of the indorser, and has no authority to do aught but collect the amount thereof for the principal and pay it over to him. Money paid by mistake to a person acting as agent for another and by him paid over to his principal without notice of the mistake, cannot be recovered back from the agent. Money paid on a forged, or raised, or altered negotiable instrument, carrying nothing suspicious upon its face, to a person known to be acting as an agent, and by him paid over to his principal in ignorance of the forgery or alteration cannot be recovered back from the agent. That the check in question, not having been raised by erasing the original amount and inserting a larger sum was not a forgery in that sense; and having been sent out by the maker, through

accident or mistake, either in blank, or for the amount of $1,280.20, and there being nothing upon its face that would indicate to the Denver Bank or the plaintiff that there was anything wrong about it, the maker should suffer for this mistake; the loss is the result of the negligence of an authorized agent of the United States. That loss should fall upon the party that occasioned it; the government having paid this check to the plaintiff under these circumstances and without any fraud on the part of plaintiff, is not entitled to recover or retain the money as against the plaintiff. The name of the payee in this check was shown upon the trial to have been written therein by a clerk in the office of said pension agent, and there was no perceptible difference in the writing upon the face of the check; the paying teller at the United States treasury who paid the check testified that in so doing he was governed by his knowledge of the handwriting of the pension agent and his clerk, which he recognized upon the face of the check when paying the same, and that the same then appeared to him to be a genuine check from the office of said agent; besides, the check was indorsed for account of the Bank of Denver, so that upon its face it showed that plaintiff was merely acting as an agent to collect the money and pay it over to its principal, and on that ground it is also entitled to a judgment.

It is therefore ordered, that the plaintiff in this action have and recover from the defendant the sum of $1,280.20 together with legal interest thereon from January 6, 1888, to January 31, 1891, the date of this decree, and amounting to $275.04, and making, for principal and interest, the sum of $1,555.24. Let judgment be entered accordingly.