BOLOGNESI et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 8, 1911.)

No. 238.

1. POST OFFICE (§ 18*)—MONEY ORDERS—CHARACTER OF INSTRUMENT—"NEGOTIABLE INSTRUMENTS."

In the establishment and operation of the postal money order system, the government is not engaging in commercial transactions, but exercises a governmental power for the public benefit; and it follows that money orders are not negotiable instruments, subject to the defenses permitted to bona fide holders for value by the law merchant. The statute also imposes limitations and restrictions inconsistent with negotiability.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 5, pp. 4767–4770; vol. 8, p. 7731.]

2. POST OFFICE (§ 18*)—MONEY ORDERS—FRAUDULENT ISSUANCE—RECOVERY OF PAYMENT.

Under Rev. St. § 4057 (U. S. Comp. St. 1901, p. 2756), which provides that in all cases where money of the Post Office Department "has been paid to any person in consequence of fraudulent representations, or by the mistake, collusion, or misconduct of any officer or other employé in the postal service, the Postmaster General shall cause suit to be brought to recover such wrong or fraudulent payment or excess," the United States may recover the amount paid out on money orders fraudulently issued from the persons to whom it was paid, and the good faith of such persons in acquiring the orders is immaterial.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 18.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by the United States against Alessandro Bolognesi and William Hartfield, trading as Bolognesi, Hartfield & Co. Judgment (169 Fed. 1013) for plaintiff, and defendants bring error. Affirmed.

Writ of error to review a judgment of the Circuit Court, Southern District of New York, in favor of the defendant in error who was the plaintiff below. In the opinion following the parties are designated as in the Circuit Court.

The United States brought an action against the defendants to recover moneys collected by them upon 128 money orders, amounting to $12,800, fraudulently issued by one Marone, a clerk in charge of a sub-station of the Brooklyn, N. Y., post office, less the amount collected upon Marone's bond.

Upon the trial the government proved the fraudulent issue of the money orders in question and their collection by the defendants. The defendants then offered evidence tending to show that they received the fraudulent money orders in good faith and paid full value for them.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Upon motion of the government the trial judge directed a verdict for the United States for the full amount claimed and the defendants have brought this writ of error.

The question of primary importance which the defendants present to this court is thus stated at the conclusion of their brief:

"The question to be determined by the court is whether, assuming that the plaintiffs in error have adduced proof of their absolute innocence and good faith, the government is entitled to recover on the theory that the orders being in fact fraudulent the plaintiffs in error must suffer the loss and not the government."

In the following opinion this question will be first considered. If it is answered in the affirmative no examination of the facts assumed to be established in it will be required. If it is answered in the negative such examination will be necessary.

Mayer & Gilbert (A. S. Gilbert and Julius M. Mayer, of counsel), for plaintiffs in error.

Henry A. Wise, U. S. Atty., and Felix Frankfurter, Asst. U. S. Atty.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). [1] The act of 1872[1] establishing a money order system in the United States, provided in its first section (Rev. St. § 4027 [U. S. Comp. St. 1901, p. 2741]):

"To promote public convenience, and to insure greater security in the transfer of money through the mail, the Postmaster-General may establish and maintain, under such rules and regulations as he may deem expedient, a uniform money order system, at all suitable post offices, which shall be designated as 'money order offices.'"

Thus in the introduction to the act is the source of congressional authority to enact it disclosed. That which promotes the public convenience and provides for the transfer of money by mail is undoubtedly a proper exercise of the power conferred upon Congress by the Constitution "to establish post offices and post roads." Const. art. 1, § 8.

In the establishment and operation of the money order system the government exercises a governmental power for the public benefit. It serves the public by furnishing a safe and cheap method for transmitting small sums of money. It carries on the system not for gain, but to supply a public need. It does not engage in business, but stands in its position of sovereignty. Consequently the principles which govern commercial transactions between individuals have little application in this case and the cases are not in point which hold that

"if it [the Government] comes down from its position of sovereignty and enters the domain of commerce it subjects itself to the same laws which govern individuals there." Cooke v. United States, 91 U. S. 396, 23 L. Ed. 237.

It follows as a corollary to the conclusion that the government in issuing money orders exercises a governmental function and does not engage in a commercial transaction that money orders are not nego-

---

[1] This act was apparently modeled after the English money order acts of 3 & 4 Vict. c. 96, and 11 & 12 Vict. c. 88.

tiable instruments subject to the defenses permitted by the law merchant to bona fide holders for value. They stand in marked contrast to notes or similar obligations which the government might issue to obtain money for its own use and upon which it might incur all the responsibilities of a private person.

Moreover, the restrictions and limitations which the postal laws and regulations place upon money orders are inconsistent with the character of negotiable instruments. Thus:

(1) The cashing of a money order cannot, under ordinary circumstances, be made in advance of the receipt of the corresponding advice. Postal Laws and Regulations, § 1002.

(2) More than one indorsement of a money order invalidates it. Id. § 1007.

(3) After an order has once been paid by whomsoever presented, the department will not be further liable. Id. § 1009.

(4) Payment of orders will be withheld under a variety of circumstances.

In view of these regulations which have been made in accordance with acts of Congress it is apparent that no such unconditional promise of payment and freedom of circulation attach to money orders as to make them negotiable instruments.[2]

The conclusion that money orders are not negotiable instruments is also to be reached upon authority. In United States v. Stockgrowers' Natl. Bank (C. C.) 30 Fed. 912, 914, Mr. Justice Brewer, then Circuit Judge, said:

"It is undoubtedly true, as settled by the case of Cooke v. United States, 91 U. S. 389 [23 L. Ed. 237] that when the government descends from its position as sovereign and deals in commercial paper, it subjects itself to the ordinary rules controlling commercial paper the same as any individual. But these post office money orders are not commercial paper; they are orders drawn by one postmaster upon another, payable to a particular person named in the order itself, unknown save as to the particular parties to the transaction—the two postmasters and the party who obtains them—so that the protection which the rules applicable to negotiable paper would lay around many transactions do not avail the defendant in this case."

While the form of money orders has been changed since the decision in the Stockgrowers' Bank Case, there is, in our opinion, nothing in such changes to impair the authority of that decision to the effect that money orders are not negotiable instruments.

As, then, we are of the opinion that money orders are not negotiable instruments, we are not called upon to determine whether in case they were such instruments a bona fide holder thereof would be protected against the want of authority to issue them. This case must,

[2] In view of the fact already noticed that the money order system in this country was apparently modeled after that of England, it is of interest to note that in Fine Art Society v. Union Bank, L. R. 17 Q. B. D. 705, English post office orders were held not to possess the character of negotiable instruments. Indeed it was taken for granted that they were in fact not such instruments, but it was contended that they had been treated as such by the post office, bankers, and other parties. The Master of the Rolls, however, said, in substance, that money orders were so different from negotiable instruments that they could not be regarded as such even upon principles of estoppel.

in our opinion, be determined upon principles other than those of the law merchant, and the defenses which that law would afford a bona fide holder for value of commercial paper do not come up for consideration.

[2] The money orders in this case were fraudulently issued and the defendants obtained the money upon them. The next question is whether the government is entitled to get it back.

Section 4057 of the Revised Statutes (U. S. Comp. St. 1901, p. 2756) provides:

"In all cases where money has been paid out of the funds of the Post Office Department under the pretense that service has been performed therefor, when, in fact, such service has not been performed, or as additional allowance for increased service actually rendered, when the additional allowance exceeds the sum which, according to law, might rightfully have been allowed therefor, and *in all other cases where money of the department has been paid to any person in consequence* of fraudulent representations, or by the mistake, collusion, or *misconduct of any officer or other employé in the postal service*, the Postmaster-General shall cause suit to be brought to recover such wrong or fraudulent payment or excess, with interest thereon." (Italics ours.)

As, therefore, it appeared in this case that money of the Post Office Department had been paid to the defendants through the misconduct of an officer or employé of the postal service, the government was entitled to recover the same and the verdict was properly directed in its favor; the good faith of the defendants, upon the principles already considered, affording them no protection.[3]

Our conclusion in this case has been reached along broad lines. We fully appreciate that in effect we hold that if it have responsible persons to look to, the government cannot lose in the operation of the money order system—that whatever may be the fraudulent conduct of its officers or employés the loss must fall upon the individual. And the principle underlying this conclusion is that any other rule—any rule which would make the government bear the burden of the malfeasance of its officers in the operation of a governmental department and permit individuals, however innocent, to obtain its moneys without responsibility—would entail endless difficulties and losses; would be inimical to the public interest and contrary to public policy.

The judgment of the Circuit Court is affirmed.

---

3 By sustaining the government's right to recover by virtue of R. S. § 4057, we are not to be considered as negativing the contention of the government that it might recover in the absence of such a statute in the common-law action of indebitatus assumpsit.

We also think the fact that the statute (section 4057) was originally enacted before the establishment of the money order system immaterial.