### UNITED STATES v. BANK OF NEW YORK, NAT. BANKING ASS'N.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

#### No. 84.

BILLS AND NOTES ⬤=⮞434—DRAFTS—NAME OF DRAWER—FORGERY—PAYMENT— RIGHT TO RECOVER.

    The Secretary of the Treasury is bound to know the signatures of those officers of the United States who are authorized to draw on him; and hence, having paid a draft purporting to have been drawn by the American consul in Argentine, but in fact bearing the consul's forged signature, the United States could not recover the money so paid, whether the draft was negotiable or not.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1268–1274; Dec. Dig. ⬤=⮞434.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the District Court of the United States for the Southern District of New York entered on March 19, 1914, sustaining the demurrer to the complaint and dismissing the complaint on the merits.

H. Snowden Marshall, U. S. Atty., of New York City (Gordon Auchincloss, of New York City, of counsel), for the United States.

Satterlee, Canfield & Stone, of New York City (Karl T. Frederick and Huger W. Jervey, both of New York City, of counsel), for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This action was brought by the United States to recover from defendant the amount of a draft paid by plaintiff to defendant on March 19, 1912, together with interest from date of payment.

The complaint alleges that defendant on or about March 14, 1912, presented to the Treasury Department at Washington, D. C., a draft dated Rosario (Argentine Republic), February 8, 1912, for $463.73, drawn on the Secretary of the Treasury, payable to the order of the British Bank of South America, Limited, and purporting to be signed by Robert T. Crane, American Consul, and bearing the indorsement of the British Bank of South America, Limited, followed by the indorsement of defendant as the last indorsement on the back thereof; that, without Crane's knowledge, Crane's signature to the draft had been forged; and that on March 19, 1912, the Secretary of the Treasury, under a mistake of fact and in ignorance that Crane's signature was a forgery, paid defendant the amount of the draft which sum defendant has refused to return to plaintiff, though requested so to do.

A copy of the instrument follows:

Consulate of the United States of America.

Rosario, February 8th, 1912.                                        No. 5.

Fifteen days after sight (acceptance waived and indorsements by procuration, excepted) of this sole of exchange.                        $463.73

Pay to the order of the British Bank of South America, Limited, four hundred, sixty-three dollars, seventy-three cts., U. S. gold                Dollars

Value received and charge the same to account for Relief of Seamen and balance of salary.

To the Secretary of Treasury.

   [Seal]                                        Robert T. Crane,
Washington, D. C.                                        American Consul.

The indorsements upon the back of the instrument are not herein set forth as they are not involved.

It is true that in some cases where a person has been induced by fraud to make payment of a bill or note such payment may be recovered back. And in like manner under some circumstances one who has paid a bill under a mistake of fact is allowed to recover the amount thereof. So under some circumstances a party who has made a payment on a forged instrument may be permitted to recover it back from the party receiving it. Welch v. Goodwin, 123 Mass. 71, 25 Am. Rep. 24 (1877); Goddard v. Merchants' Bank, 4 N. Y. 147 (1850).

But if one accepts forged paper purporting to be his own and pays it to a holder for value, the Supreme Court has said that it is undoubtedly true as a general rule of commercial law that he cannot recall the payment. What he has done amounts to an adoption of the paper as genuine. He is presumed to know his own signature. Cooke v. United States, 91 U. S. 389, 396, 23 L. Ed. 237 (1875). So it is incumbent upon the drawee of a bill or check to be satisfied that the signature of the drawer is genuine. He must know, is conclusively presumed to know, whether the signature of the drawer is genuine.

The case of Price v. Neale, 3 Burrows, 1354, decided in 1762, established the principle that the drawee of a draft, having accepted or paid it, cannot compel repayment of the money upon discovering that his

drawer's name was forged. And for more than a century and a half it has been settled law that the drawee of a bill must be presumed to know as matter of law the handwriting of his correspondent the drawer of the bill, and that it is incumbent upon him to be satisfied of the genuineness of the drawer's signature. If he accepts or pays a bill to which the drawer's name has been forged, he is thereby estopped by his act and cannot thereafter repudiate his acceptance or recover back the money he has paid. The principle applies as well to the case of a bill paid upon presentment as to one accepted and afterwards paid. See National Park Bank v. Ninth National Bank, 46 N. Y. 77 (1871).

In Price v. Neale two bills of exchange had been paid by the drawee, the signature of the drawer having been forged. One bill was paid when it became due, without acceptance. The other was accepted and paid at maturity. When the forgery was discovered, an action was brought to recover back the money paid; it being admitted that both parties were equally innocent. The action was for money had and received, in which no recovery could be had unless it was against conscience for defendant to retain it. Lord Mansfield said that in such a case as the one then before him it could not be affirmed that it was unconscientious for defendant to retain the money he having paid a fair and valuable consideration for the bills. He continued:

"Here was no fraud, no wrong; it was incumbent upon the plaintiff to be satisfied, that the bill drawn upon him was the drawer's hand, before he accepted or paid it; but was not incumbent upon defendant to inquire into it. There was notice given by the defendant to the plaintiff, of a bill drawn upon him, and he sends his servant to pay it, and take it up; the other bill he actually accepts, after which the defendant, innocently and bona fide, discounts it; the plaintiff lies by for a considerable time after he has paid these bills and then found that they were forged. He made no objection to them at the time of paying them; whatever of neglect there was, was on his side. The defendant had actual encouragement from the plaintiff for negotiating the second bill, from the plaintiff's having without any scruple or hesitation paid the first; and he paid the whole value bona fide. It is a misfortune which has happened without the defendant's fault or neglect. If there was no neglect in the plaintiff, yet there is no reason to throw off the loss from one innocent man upon another innocent man. But in this case if there was any fault or negligence in any one, it certainly was in the plaintiff and not in the defendant."

It is true that it has been held in one case at least that the doctrine of Price v. Neale should not be adhered to in cases where the holder of an unaccepted bill presents it to the drawee for acceptance or payment, and that in such cases the unrestricted indorsement and presentation of the draft to the drawee is a representation on the part of the holder and indorser that the signature of the drawer is genuine. Ford & Co. v. People's Bank of Orangeburg, 74 S. C. 180, 54 S. E. 204, 10 L. R. A. (N. S.) 63, 114 Am. St. Rep. 986, 7 Ann. Cas. 744 (1906). And in North Dakota the doctrine of Price v. Neale has been rejected in its entirety. First National Bank v. Bank of Wyndmere, 15 N. D. 299, 108 N. W. 546, 10 L. R. A. (N. S.) 49, 125 Am. St. Rep. 588 (1906). But the two cases last cited are without support in the decisions of the English courts and have little, if any, support in the American decisions.

Indeed, the principle established by Price v. Neale has been incorporated into the uniform Negotiable Instruments Act which has been adopted in the District of Columbia and was in force there at the time this payment was made. That act provides that the acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance and admits "the existence of the drawer, the genuineness of his signature, his capacity and authority to draw the instrument." As payment is equivalent to acceptance, the United States under the act admitted the genuineness of the drawer's signature (Act Jan. 12, 1899, c. 47, 30 St. at L. p. 785, § 62), if the bill was negotiable.

As early as 1825, the Supreme Court applied the principle of Price v. Neale in United States Bank v. Bank of Georgia, 10 Wheat. 333, 6 L. Ed. 334. The Supreme Court, through Mr. Justice Story, in United States Bank v. Bank of Georgia, referred approvingly to Price v. Neale, saying:

"The case of Price v. Neale has never since been departed from; and in all the subsequent decisions in which it has been cited, it has had the uniform support of the court, and has been deemed a satisfactory authority."

Price v. Neale goes upon the same theory as do those which hold that a bank is bound to know its customer's signature, and has no remedy where it has paid or certified a forged check to a bona fide holder for value. The presumption is that it has greater means and better opportunities to become familiar with the handwriting of depositors than are afforded the holder.

The courts have in a number of cases held that the rule that the drawee is presumed to know the signature of his drawer does not apply if the holder by his negligence has contributed to the success of the fraud practiced. Myers v. Southwestern National Bank, 193 Pa. 1, 44 Atl. 280, 74 Am. St. Rep. 672; Woods v. Colony Bank, 114 Ga. 683, 40 S. E. 720, 56 L. R. A. 929 (1902); Brennan v. Merchants', etc., Bank, 62 Mich. 343, 28 N. W. 881 (1886). But in this case the government makes no claim that defendant has been guilty of any negligence contributory to the fraud practiced. Counsel for the government comes into court with the statement that the Secretary of the Treasury of the United States is not presumed to know the signatures of such agents of the United States as are authorized to draw on him. It is argued that the United States is entitled to greater protection than an individual from the unauthorized and fraudulent acts of its agents. And it is said that to charge the government with knowledge of the genuineness of the signatures of those of its servants who may be entitled to draw upon it is to impose a liability on it which public policy demands should be borne by individuals dealing with it. We are informed that to hold the Treasury Department liable in a case such as the case at bar is not only not common sense, but is against the recognized principles of law. Attention is called to the recent case of United States v. National Exchange Bank (1909) 214 U. S. 302, 317, 29 Sup. Ct. 665, 670 (53 L. Ed. 1006, 16 Ann. Cas. 1184) where the present Chief Justice said:

"The exceptional rule as to certain classes of commercial paper proceeds upon an assumption of knowledge or duty to know, naturally arising from the situation of the parties, entirely consonant with their capabilities, and in accord with the common sense view of their relation. To apply the rule, however, to the government and its duty in paying out the millions of pension claims, which are yearly discharged by means of checks, would require it to be assumed that that was known, or ought to have been known, which on the face of the situation was impossible to be known, would besides wholly disregard the relation between the parties, and would also require that to be assumed which the obvious dictates of common sense make clear could not truthfully be assumed."

In that case the United States was held not chargeable with knowledge of the signatures of the vast number of persons entitled to receive pensions. The action was brought by the United States to recover the sum of payments made at the subtreasury in Boston upon 194 pension checks the signatures of the persons to whom the checks were payable having been forged. The Supreme Court held that the government had the right to recover. A similar ruling had been rendered in an earlier decision made by Judge Coxe in 1889 in United States v. Onondaga County Savings Bank (D. C.) 39 Fed. 259, which we affirmed in 64 Fed. 703, 12 C. C. A. 407.

The case of United States v. National Exchange Bank, supra, affords no support, however, for the principle which counsel for the government ask us to recognize in this case. The rule announced in that case is in entire harmony with Price v. Neale, supra, and with the cases which have followed it. In United States v. National Exchange Bank the forgery was not of the drawer's name, as in Price v. Neale, but of the payee's name on pension warrants. The forgery of a payee's name or of an indorser's name is very different from the forgery of a drawer's name. At common law there is no obligation upon the part of the drawee to know the genuineness of the signature of the payee or of an indorser. Price v. Neale has never been applied to such cases. In Bolognesi v. United States, 189 Fed. 335, 111 C. C. A. 67, 36 L. R. A. (N. S.) 143 (1911), the United States had brought an action against the defendants to recover moneys collected by them upon 128 money orders, amounting to $12,800, fraudulently issued by a clerk in charge of a substation post office, less the amount collected on the clerk's bond. The defendants claimed that they received the fraudulent orders in good faith and paid full value for them. The trial judge directed a verdict for the United States for the full amount claimed, and we sustained him in so doing. But that case was subject to a statute (Rev. St. § 4057; U. S. Comp. St. 1913, § 7606) which expressly provided that in all cases where money of the Post Office Department had been paid to any person in consequence of fraudulent representations, or by the mistake, collusion, or misconduct of any officer or other employé in the postal service, the Postmaster General should cause suit to be brought to recover such wrong or fraudulent payment or excess. And we held that the United States might recover the amount paid out, on money orders fraudulently issued, from the persons to whom it was paid, and that the good faith of such persons in acquiring the orders was immaterial. In the course of the opinion it was said that the case was determined upon principles other than those of the law merchant, and

the defenses which that law would afford a bona fide holder for value of commercial paper did not come up for consideration. We thought that the government in issuing money orders was exercising a governmental function.

The contention of the government that an exception should be made in its favor to the well-established rule of Price v. Neale must be disregarded. The number of persons who can have a right to draw bills upon the government is relatively small, and it should protect itself as do banks and other large corporations against imposition in such cases. The Supreme Court, in Cooke v. United States, 91 U. S. 389, 23 L. Ed. 237 (1875) said:

"When the United States become parties to commercial paper, they incur all the responsibilities of private persons under the same circumstances."

And we find no warrant for saying that the United States is not bound by the same law as an individual when it enters into a transaction of this nature.

A bill is negotiable paper, except where the rule is changed by statute, only where it is made payable at all events and unconditionally. And this is expressly required under the Negotiable Instruments Law in the United States and under the Bills of Exchange Act in England. Counsel contend that the draft in this case was not negotiable because it' was upon its face conditional. It is said that the words appearing on the draft, "and charge the same to account for relief of seamen and balance of salary," made the draft conditional, and that it was not to be paid at all unless Congress had appropriated and set aside a fund, which was not exhausted at the time the draft was presented, for the payment of salaries and for the relief of seamen. If no such fund existed for the relief of seamen, or if nothing remained unpaid in salary account, the draft would have been worthless as the holder was bound to know.

We do not, however, find it necessary to determine whether the claim that this bill is conditional, and therefore not negotiable, is sound or unsound. In our view of the matter it is unimportant whether it is conditional or unconditional, negotiable or nonnegotiable. And we are not called upon to say whether a bill can be drawn upon the Secretary of the Treasury which is unconditional, and whether every bill drawn upon him is inherently conditional. That question can be decided when it arises. But in our opinion the doctrine of Price v. Neale is as applicable to nonnegotiable bills as it is to negotiable ones. Price v. Neale went upon the theory that a drawee knows the signature of his drawer and that it is negligence in him if he accepts or pays without first satisfying himself respecting the genuineness of the signature. There seems to be as much reason for applying the principle to nonnegotiable paper as to paper which is negotiable, and we are unaware that any case has been decided in which a court has held the principle applicable to instruments which are negotiable under the law merchant. And sometimes it is said that without regard to the principle of negligence the drawee who pays the money should bear the loss, assuming that both himself and the holder who presented the bill for payment are equally innocent as he is the one whose act occasioned the loss.

But upon whichever of these two theories the doctrine of Price v. Neale may rest and the first of the two seems the better reason, they apply with as much force where the bill is nonnegotiable as where it is negotiable. The importance of the distinction between negotiable and nonnegotiable paper grows out of the principle that the bona fide holder of negotiable paper takes, free from equities while the holder of non-negotiable paper takes subject to them. But that distinction does not affect the question now under consideration. The act of payment follows the acquisition of the title by the holder, and it is the effect of the act of payment alone which is to be determined, and, in determining it, it can make no difference whether or not the holder acquired the paper free from or subject to existing equities, and, if it is not unconscientious for the holder of a negotiable bill who is paid on a forged signature of the drawer to retain the money paid him by the negligence of the payee no more is it unconscientious in the holder of the nonnegotiable bill who has been paid in the same way to retain what he has been paid.

We are asked to hold, under the authority of Guaranty Trust Co. v. Grotrian, 114 Fed. 433, 52 C. C. A. 235, 57 L. R. A. 689, and of Hannay v. Guaranty Trust Co. (C. C.) 187 Fed. 686, that the money paid can be recovered back. In the first of these cases a draft directed the drawee to pay and charge the same to account of certain flax seed, forged duplicate bills of lading for which were attached to the draft. The acceptance was "Accepted against indorsed bills of lading" for flax seed. The draft was paid without knowledge that the bills of lading were forged and before the arrival of the steamship on which the flax seed should have been according to the bills of lading and without the knowledge that the flax seed was not there.

It was held in that case that the acceptance was conditioned on the delivery of genuine bills of lading, and that, as this condition was not waived by payment, the acceptor could recover the money paid. The same principle was involved in the second of these cases. But those cases are not in point as respects the question now before us. In the two cases cited, the forgery was not of the signature of the drawer, but of the bills of lading which purported to have been issued by the carrier. The drawee of the bill of exchange was not presumed to know the genuineness of the signatures to the bills of lading. The court holding the acceptance and payment to have been conditional on the genuineness of the bills of lading allowed the money to be recovered back as the condition had not been realized.

Judgment is affirmed.