### UNITED STATES v. NATIONAL EXCH. BANK OF BALTIMORE, MD.

(Circuit Court of Appeals, Fourth Circuit. September 29, 1924.)

No. 2203.

**1. Bills and notes ⬅434—Drawee, who was also drawer, paying raised check, not entitled to recover payment to holder for value.**

United States, which was both drawer and drawee on Veterans' Bureau check, drawn by its disbursing clerk, which check was raised after delivery to payee, in absence of special circumstances, could not recover payment to holder for value, not chargeable with negligence or bad faith.

**2. Bills and notes ⬅434—Drawee paying forged check not entitled to recover payment to holder for value.**

United States cannot recover payment to holder for value of check to which signature of one of its officers authorized to sign for it has been forged.

**3. United States ⬅70(1)—United States, by becoming party to commercial paper, assumes all responsibilities of private person.**

When United States elects to become party to commercial paper, it assumes all responsibilities of private persons under same circumstances.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Action by the United States against the National Exchange Bank of Baltimore, Md. Judgment for defendant, and plaintiff brings error. Affirmed.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., for plaintiff in error.

G. Ridgely Sappington, of Baltimore, Md. (Charles G. Baldwin, of Baltimore, Md., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The parties will be designated as they were below; that is, the United States will be called the plaintiff and the National Exchange Bank of Baltimore the defendant. The District Court sustained a demurrer to the declaration. The plaintiff did not seek to amend, but, when judgment went against it, sued out this writ of error. The allegations of the declaration may be briefly summarized. On June 1, 1922, the plaintiff at Washington by its duly authorized disbursing clerk drew a Veterans' Bureau check for $47.50 in favor of one Beck. After its delivery to him, it was by some one fraudulently raised to $4,750. On June 3 Beck indorsed it over to the Bank of Commerce of Spartanburg, S. C., and was paid $4,750 for it. On the same day that bank in its turn indorsed it, "Pay to the order of any bank, banker, or trust company, all prior indorsements guaranteed," and in the usual course of business negotiated it for value to the defendant, receiving $4,750 for it. On the 5th of June the defendant indorsed it, "Received payment through the Baltimore Clearing House, indorsements guaranteed," and in the usual course of business negotiated it for $4,750 to the plaintiff's agent, the Baltimore Branch of the Federal Reserve Bank of Richmond, which sent it to the Treasurer of the United States, who paid it, without noticing that it had been raised.

It is not charged that demand for repayment was made upon the defendant until after it had in good faith parted with the money it received. Such a declaration it is said, is bad, because it shows, first, that the defendant held the check for collection only; and, second, that the plaintiff, who was both drawer and drawee of the check, paid it upon presentation. It is not claimed that defendant is liable, if it was in fact acting merely as a collection agency. National Park Bank v. Seaboard Bank, 114 N. Y. 28, 20 N. E. 632, 11 Am. St. Rep. 612; United States v. American Exchange National Bank (D. C.) 70 F. 232; Wells, Fargo & Co. v. United States (C. C.) 45 F. 337, 2 Michie on Banks and Banking, 1497.

The plaintiff, however, denies defendant's contention that the indorsement put on by the Bank of Commerce, "Pay to the order of any bank, banker, or trust company,"

shows that the defendant was nothing more than an agent to collect. The defendant relies upon such cases as Bank of Indian Territory v. First National Bank, 109 Mo. App. 665, 83 S. W. 527; Lippett v. Thomas Loan & Trust Co., 88 Conn. 185, 90 A. 369; Citizens' Trust Co. v. Ward, 195 Mo. App. 223, 190 S. W. 364; National Bank of Rolla v. National Bank of Salem, 141 Mo. App. 719, 125 S. W. 513.

[1] The plaintiff answers that, since the enactment of the uniform Negotiable Instruments Act, if not before, such an indorsement is not restrictive, but, on the contrary, made the defendant a holder in due course, and cites Interstate Trust Co. v. United States National Bank, 67 Colo. 6, 185 P. 260, 10 A. L. R. 705, and National Bank of Commerce v. Bossemeyer, 101 Neb. 96, 162 N. W. 503, L. R. A. 1917E, 374. It furthermore argues that, no matter what significance might at any time or anywhere have been given to such an indorsement, when unexplained, it was always permissible to show that the indorsee who took under it was in fact the real owner of the check, and that it says it tendered itself ready to do by alleging in its declaration that the South Carolina bank "negotiated the said check for value in the usual course of business to and received from the defendant the sum of $4,750." We do not find it necessary to pass upon these interesting questions, as well of substantive law as of pleading, because in our view the plaintiff, having been both the drawer and the drawee of the check, may not, in the absence of special circumstances not here existing, recover back the money it has paid to a holder for value not chargeable with negligence or bad faith. Bank of the United States v. Bank of Georgia, 10 Wheat. 333, 6 L. Ed. 334.

[2] It is, of course, clear that the plaintiff could not recover from such a defendant what it had paid upon a check to which there had been forged the signature of one of its officials empowered to sign for it. United States v. Chase National Bank, 252 U. S. 485, 40 S. Ct. 361, 64 L. Ed. 675, 10 A. L. R. 1401; Gloucester Bank v. Salem Bank, 17 Mass. 41; Cooke v. United States, 91 U. S. 389, 23 L. Ed. 237; United States v. Bank of New York, 219 F. 648, 134 C. C. A. 579, L. R. A. 1915D, 797. It is nothing to the point that one who pays his genuine check, upon which there has been forged the indorsement of the payee or of some intermediate holder in due course, may in the absence of negligence or estoppel compel repayment by him to whom he paid, no

matter how innocent of carelessness or wrongdoing the recipient may have been. United States v. National Exchange Bank, 214 U. S. 302, 29 S. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184.

Nor does it help plaintiff that, prior to the almost universal adoption of the uniform Negotiable Instruments Act, the general rule in this country was that, when a check or draft had been fraudulently altered after issue, and had been paid by the drawee in accordance with its altered tenor, the latter, if he were not also the drawer of the instrument, could recover from him to whom payment had been made, although the last named might have paid full value for it and was not chargeable with any fault either of omission or of commission. White v. Continental National Bank, 64 N. Y. 316, 21 Am. Rep. 612. In the instant case the plaintiff was both drawer and drawee, and therefore it is not necessary for us to inquire whether section 62 of the Negotiable Instrument Act has changed the law applied in the case last cited, as Professors Ames and Brannon believe and as Judge Fitzhenry has held. Brannon on the Negotiable Instruments Act (3d Ed.) 25; American Hominy Co. v. Milliken National Bank (D. C.) 273 F. 550.

Plaintiff is doubtless correct in contending that the Supreme Court and other American tribunals, state and federal, have not carried to its logical conclusion all that Lord Mansfield said in Price v. Neal, 3 Burr. 1355. They have not been willing to hold that in no case can an innocent party, who pays forged or altered negotiable paper, recover from the equally innocent individual to whom such payment has been made. In some cases they have declined to say that, where neither party is to blame, the law will leave them as it finds them. For the instant purpose it is enough that the highest court of the land has expressly applied to a case such as that now before us that part of his opinion in which he said: "It was incumbent upon the plaintiff to be satisfied that the bill drawn upon him was the drawer's hand, before he accepted or paid it." Bank of the United States v. Bank of Georgia, supra.

Many years later the same court reaffirmed its view that one who accepts and pays forged paper purporting to be his own, and pays it to a holder for value, cannot recall the payment. It went on to explain: "The operative fact in this rule is the acceptance, or more properly, perhaps, the adoption, of the paper as genuine by its apparent maker. Often the bare receipt of the paper, accompanied by payment, is equivalent to an adoption within the meaning of the rule, because, as every man is presumed to know his own signature, and ought to detect its forgery by simple inspection, the examination which he can give when the demand upon him is made is all that the law considers necessary for his protection. He must repudiate as soon as he ought to have discovered the forgery; otherwise, he will be regarded as accepting the paper. Unnecessary delay under such circumstances is unreasonable; and unreasonable delay is negligence, which throws the burden of the loss upon him who is guilty of it, rather than upon one who is not." Cooke v. United States, 91 U. S. 389, 23 L. Ed. 237.

[3] It has been already pointed out that, where the drawer and the drawee are one, the cases make no distinction between a forged and a raised instrument. There is, it is true, much force in the plaintiff's argument that there is little ground to impute negligence to it merely because one of its thousands of clerks accepted at its apparent face a check originally drawn by another for a hundredth part of the sum. The number of the transactions in which it is compelled to engage and the army of employees through whom it must act are illustrated by the fact that the check in controversy bore the numbers 48,218,587. It asks, is it reasonable to suppose that every one of those whom it charges with the duty of paying its obligations can know the amount for which each of them was in the first instance drawn?

It is not for us to say whether the business of making such payments can be so organized, distributed, and safeguarded as to insure that he who pays may surely and swiftly ascertain for what sum the check or draft was issued. It is enough that, when the United States elects to become a party to commercial paper, it assumes all the responsibilities of private persons under the same circumstances. Cook v. United States, supra; United States v. Bank of New York National Banking Association, 219 F. 648, 134 C. C. A. 579, L. R. A. 1915D, 797. If the burden becomes too heavy, Congress can give relief. It may subject some or all classes of what would otherwise be negotiable paper when issued by the government to statutory restrictions such as those imposed upon money orders. Bolognesi v. United States, 189 F. 335, 111 C. C. A. 67, 36 L. R. A. (N. S.) 143; United States v. Bank

of New York National Banking Association, supra. Such action might entail much inconvenience upon the citizens and embarrass the operations of the government itself, precisely as limitations upon the free negotiability of ordinary paper issued by private individuals might clog the arteries of trade. It is for Congress to choose.

Affirmed.