# Russell v. First Nat. Bank of Hartselle.

## Assumpsit.

(Decided Nov. 14, 1911, rehearing denied Dec. 14, 1911, 56 South 868.)

1. *Banks and Banking; Checks; Payment on Forged Endorsement; Dilligence.*—Where a check is drawn payable to an actually existing person, and his endorsement thereon is forged, payment by the bank is not an acquittance, as a general rule; and this is true although it bears the endorsement of other banks through which it has passed, the paying bank having used no diligence in ascertaining whether the endorsement was genuine, and not having shown that the other banks had used any.

2. *Same; Presumption.*—If it can be said that the fact that the endorsement of the payee of a check was forged by a person of the same name, living where the bank was located which first cashed the check, could effect the liability of the bank on which it was drawn and which subsequently paid it, to the drawer of the check, such an endorsement by such a person cannot be presumed.

3. *Same; Delivery to One as Agent of Payee.*—While the rule is that where one, by representing that he is a certain other person, induces another to draw a check in his favor in the name of the person he represents himself to be, the drawer of the check cannot complain of its payment by the bank on which it is drawn, when endorsed by such imposter in the name assumed by him, yet this rule does not apply where a check, payable to a certain person, is delivered to another on his false representation that he is the payee's agent, and is paid on said imposter's forged endorsement of the payee's name.

[Russell v. First Nat. Bank of Hartselle.]

4. *Same; Evidence.*—Where H. falsely represented himself to be an agent of F. and delivered to R. a deed to land, the signature of F being forged thereto, and received from R. a check payable to F., the bank on which it was drawn, on being sued by R. on the ground that it was liable for payment of the check on the forged endorsement of F's name, may not introduce the deed in evidence, for the purpose of comparing the signature to the deed with that of the endorsement of the check; it being entirely immaterial whether they were the same or not.

5. *Same.*—As regard the liability of the bank on which a check is drawn, for paying it on a forged endorsement of the payee's name, it is immaterial that the land, for the payment of which the check was given, was worth more than was paid for it.

6. *Words and Phrases; "Void."*—A "void" thing is, in legal effect, nothing, and has no effect whatever.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOS. W. WERT.

Action by T. J. Russell against the First Nat. Bank of Hartselle to recover money paid by it on a check drawn by him, endorsement of which was forged. Judgment for defendant and plaintiff appeals. Reversed and remanded.

CALLAHAN & HARRIS, for appllant. Where an impostor assumes to act as agent and the check is payable to his principal, and delivered to him as agent, and the check is paid by the drawee bank by forged endorsement the bank becomes liable to drawer.—*Trust Co. v. Northwestern Bank,* 50 L. R. A. 75, and notes; *Murphree v. Metropolitan Nat. Bank,* 77 N. E. 693; *Jordan-March Co. v. Nat Bank,* 22 L. R. A. (N. S.) 264; 6 L. R. A. 625; 48 N. E. 160; 17 L. R. A. (N. S.) 514. Charges 8, 11, and 14 refused to plaintiff presents this proposition and should have been given. The court erred in declining to allow the plaintiff to answer the question propounded to him, to which objection was sustained.—*Thompson v. N. E. M. S. Co.,* 110 Ala. 408; 6 Ency. Ev. 431; 71 N. E. 694; 57 A. M. Dec. 257. The demurrer to pleas 19 and 20 should have been sustain-

ed.—*Osborne v. A. S. & W. Co.*, 135 Ala. 575; *Phoenix Ins. Co. v. oMog*, 78 Ala. 301.; Section 5330, Code 1907. There is no legal presumption that the check was endorsed by a person whose name was the same as that of the payee of the check.—*Tinney v. C. of Ga. Ry. Co.*, 129 Ala. 527. Demurrers to pleas 8 and 12 should have been sustained.—Authority supra and 17 N. Y. 205; 98 Ind. 85; 5 Cyc. 548. Charges 4 and 5 should have been given.—*Jordan-Marsh Co. v. Nat. Bank, supra.* The court erred in giving charge 25 for defendant.—5 Cyc. 548.

TENNIS TIDWELL, for appellee. Counsel discuss the pleadings and insist that the court did not err in overruling demurrers thereto.—*White v. Springfield*, 134 Mass. 234; *Bank v. Bank*, 23 L. R. A. 615. The negligence of the plaintiff was the proximate cause of his loss and was a good defense.—*A. G. S. R. R. Co. v. Chapman*, 80 Ala. 615. The recitals in the deed were conclusive of the facts therein recited.—*Russell v. Hollman*, 47 South. 205. Having been introduced by the plaintiff it was conclusive evidence that it was executed by Framhold and it could be used for comparison as to handwriting.—*Griffin v. The Working Woman's Home*, 44 South. 605. Although the deed was signed by another it was still the act of Framhold himself.—*Lewis v. Watson*, 13 South. 470. Counsel discuss other assignments of error but without citation of authority.

DE GRAFFENRIED, J.—Frank Framhold is now and has been for the past 21 years a resident of Cincinnati, Ohio. During that period he has owned 160 acres of land, which is situated near Hartselle, in Morgan county, Ala., and which appears to be valuable princi-

pally for its timber. During the period above referred to, no one has been in the actual occupancy of the land, and Framhold's possession of it was that possession which is referrable to his title. So far as the record discloses, he possesses and has possessed, during the above period, an unincumbered fee-simple title to the land. He appears to have had relatives in Alabama, but seems to have known but little of them; and was himself a stranger to the people of Morgan county. It further appears from the evidence that he had no agent representing him in Morgan county. It seems that it was the custom of the tax assessors of that county to annually forward to him, at his address in Cincinnati, an assessment blank, and upon such blank he assessed the lands for taxation, and returned the assessment to the assessor at Hartselle. It seems that his taxes were paid by him direct to the tax collector, but whether by checks or post office orders we do not know.

It further appears from the testimony that Framhold had an uncle, who was about 65 years of age, and who resided, certainly for a part of the above period, in different parts of Alabama; and that the name of his uncle was Frank Framhold. There is some evidence tending to show that Frank Framhold, the uncle of the Framhold who owned the land, resided for 5 or 6 years in Birmingham; and it may be that he resided at that place during that period which is covered by the transaction out of which arose this controversy. Frank Framhold, the nephew and the owner of the land, does not seem to have known much of his said uncle, as it appears from the testimony that he had not seen him for 16 of 17 years.

One Claud Harris, who was the son of a man who appears to have been the tax assessor of Morgan county for a period of six years, resided in Hartselle, and it

appears from the evidence that he aided his father in the perrformance of his duties as such tax assessor. It further appears from the evidence that the father of Claud Harris died while he was the tax assessor of said county, and that Claud Harris acted as such tax assessor from the time of his father's death until his successor was duly and regularly appointed. We gather from the evidence that the transaction out of which this litigation arose either occurred while Claud Harris was in the tax assessor's office, or shortly thereafter.

The appellant, desiring to buy the said 160 acres of land, went to the said Claud Harris, and asked him if he knew who owned the land, and whether it was for sale. Claud Harris informed appellant that the land belonged to Frank Framhold; that it was listed with him for sale at $640, and that Frank Framhold lived in *Birmingham;* and that if he desired the land he could get it at that price. Thereupon appellant told Harris that he was willing to pay $640 for the land, and would do so upon the execution and delivery to him of a good and sufficient deed, signed and executed by Frank Framhold, and conveying a fee-simple title to the land. Harris then told appellant that he would go to Birmingham and get the deed; and there is evidence tending to show that Harris about that time, went to Birmingham, and that, in the meantime, appellant had the title investigated, and found, upon investigation, that the title to the land was good in Frank Framhold. It further appears from the evidence that Claud Harris, who was then in Hartselle, called appellant up over the telephone, and told him that he had obtained the deed from Frank Framhold, and was ready to deliver it to him upon the payment of the money. Thereupon appellant met the said Harris in the banking house of

appellee, and Harris exhibited to him a deed, which was regular on its face, and which purported to be signed by Frank Framhold, and which purported to convey to appellant an unincumbered fee-simple title to the said land, and which purported to have been duly witnessed by two witnesses, and to have been duly acknowledged before a notary public in Birmingham, Ala. Claud Harris stated to appellant, at the time he handed appellant the deed, that his commission for making the sale was 10 per cent. and that he desired two checks; one payable to the said Claud Harris for the 10 per cent., and the other to said Frank Framhold. Appellant declined to do this, stating that he knew nothing of the arrangement which had been made between Claud Harris and Frank Framhold, and thereupon drew a check in favor of Frank Framhold for $640, and had the appellee to certify the check, and then delivered the check to Harris, to be by him delivered to Frank Framhold. Thereupon appellant took his alleged deed, assumed such possession of the land as it was capable of, assessed it for taxation, and in the fall of the year filed the deed for record in Morgan county, and it was recorded there.

The check was, it appears, first negotiated in Birmingham, Ala. It appears to have been indorsed by Frank Framhold, Claud Harris, J. B. Hopkins, the First National Bank of Birmingham, which guaranteed all prior indorsements, and by the People's Savings Bank, which also guaranteed all prior indorsements. It was paid by the appellee upon the faith of the guaranty as to prior indorsements by the above Birmingham banks. The appellee did not know Frank Framhold or his signature, and made no inquiry as to the genuineness of his signature appearing on the back of said check; but it did know the Birmingham banks,

knew that they were solvent, and relied exclusively up-
on their guaranties.

About a year after the payment of the check, Frank
Framhold came to Hartselle, and appellant learned
then, for the first time, that said Frank Framhold had
not only not signed the deed, but that he had never
heard of it, and that he had not only not indorseed said
check, but that he had never heard of it. In other
words, appellant then learned, for the first time, that
said deed was a forgery, and that said Framhold's sig-
nature as the indorser of said check was also a forgery.
Thereupon appellant immediately withdrew any claim
that he had previously been making to said land on
account of said deed, and immediately demanded of
appellee the payment of said $640 which it had paid
on said check and charged to appellant's account. The
appellee refused to pay appellant said sum, and this
suit was brought by appellant against appellee for its
recovery.

1. As a general rule, where a check is drawn, pay-
able to the order of any actually existing person, if the
order or endorsement of such payee is forged, payment
by the bank on which it is drawn is not an acquittance.
The depositor has directed payment to be made in a
certain manner; a payment made otherwise than ac-
cording to his directions is no discharge of a bank's ob-
ligation towards him. A check or bill, payable to or-
der, is authority to the banker only to pay it to the
payee, or to a person who becomes the holder by a gen-
uine indorsement.—Morse on Banks and Banking, vol.
2 (3d Ed.) § 474.

2. The appellee recognized the above rule, and it un-
dertook to relieve itself of responsibility by claiming
that appellant, through his negligence, had enabled
the man who committed the forgery to success-

fully perpetrate the fraud. It in no way under-
took to show what, if any, diligence was exercised by
either of the banks in Birmingham when they receiv-
ed the check to ascertain whether the payee had actu-
ally indorsed the check; and it showed, by its own evi-
dence, that it paid the check without any investigation
as to the genuineness of the signature of Frank Fram-
hold as an indorser thereof, and that it paid it *solely*
upon the guaranty as to prior indorsements by the
banks in Birmingham. It exercised, when it paid the
check, no diligence to ascertain whether Framhold's
signature on the back of the check was genuine, and it
offered no evidence that the Birmingham banks had
done so.

As was said by the Supreme Court of Michigan, in
the case of *Judson Harmon, Receiver, v. Old Detroit
National Bank,* 153 Mich. 73, 116 N. W.. 617, 17 L. R.
A. (N. S.) 514, 126 Am. St. Rep. 467: "In this case the
defendant took no precautions before paying the war-
rant to ascertain the identity of the payee. It did not
show that it paid the warrant to the payee named there-
in; it evidently relied upon the identification made by
the bank in Denver, Colo., where the draft was cashed,
and whether that bank took the requisite precaution
or not we do not know. It would naturally excite sus-
picion that a check drawn in Detroit, payable to a cor-
poration in Chicago, on a bank in Detroit should be
presented to a bank in the distant city of Denver. It
was clearly the duty of Denver bank to take proper
means to assure itself that it was paid to the proper
party; in other words, to take proper means to identify
the payee.—2 Morse on Banks and Banking, § 466; El-
*lis v. Ohio Life Ins. & T. Co.,* 4 Ohio St. 628, 64 Am.
Dec. 610. The court, in the case of *Ellis v. Ohio Life
Ins. & T. Co., supra,* said: 'Where the negligence reach-

es beyond the holder, and necessarily affects the drawee, and consists of an omission to exercise some precaution, either by the agreement of the parties or the course of business devolved upon the holder, in relation to the genuineness of the paper, he cannot in negligent disregard of this duty retain the money obtained upon a forged instrument.' The negligence of the Denver bank is imputable to the defendant."·

3. It is contended by appellee that, as there was a man by the name of Frank Framhold, the uncle of the owner of the land, who may have been living in Birmingham, and as he may have been the man who signed the alleged deed, and as he may have been the man who signed his name on the back of the check, therefore there was evidence before the jury which authorized them to infer that the Birmingham banks received the check upon the genuine indorsement of Frank Framhold, the uncle, under a mistaken belief that he was the real payee of the check; and that therefore there was some evidence in the case upon which the appellee could prdicate a defense on that ground. A signature, with intent to defraud, by another person by the same name as the person to whom a check is drawn is just as much a forgery as if the names were different. In this case an intimation by us of an opinion as to whether the acceptance, by the banks in Birmingham, of the check in good faith from Frank Framhold, the uncle, and the payment of the money to him would or would not, under all the circumstances surrounding the case, furnish appellee with a defense to the suit would be mere dictum. If Frank Framhold, the uncle, indorsed the check, he was guilty, under the undisputed evidence, of forgery, and, as there is no evidence whatever that he did indorse it, we cannot presume that he

did so.　The presumption of the law, on the contrary, is that he did not.

4.　There appears in a community occasionally an impostor—a person assuming the name of some other person, for the purpose of imposition or fraud.　In such cases, the general rule seems to be that, where the impostor assumes to be, and by such assumption induces a drawer of a check to believe he is in fact, the person he claims to be, and is by the drawer of the check actually named as payee in the check, then the drawer of the check has no right to complain of the payment of the check by the bank upon which it is drawn, if it was actually indorsed by the impostor, and he received the money.　But this rule does not apply ordinarily to a case where the impostor merely assumes to be the agent of the person named as the payee, and not the payee himself; for, while the drawer, by delivering the check to such a person, may be regarded as vouching for his as the agent of the payee, he does not vouch for his right to indorse the payee's name.—*Judson Harmon, Receiver, v. Old Detroit National Bank, supra.*

In the present case, there was no one, so far as the evidence discloses, in Birmingham or elsewhere who personated Frank Framhold.　The evidence does show that Claud Harris falsely represented himself to be the agent of Frank Framhold, and that he, in person, or by the aid of some confederate, forged Frank Framhold's signature on the back of the check.　The fact that he, either in person or with the aid of a confederate, also forged the same name to a deed does not, it seems to us, throw any light upon this case, or in any way help appellee. No banker who handled the check ever saw the signature to the deed, and it cannot be said that the signature to the deed in any way caused the bankers, or any of them, to cash the check.

We can see nothing in the facts of this case which takes it without the operation of the well-established rule that a banker on whom a check is drawn must ascertain, at his peril, the identity of the person named in it as payee; and we can see nothing from which a reasonable conclusion can be drawn that any bank connected with this transaction was misled by an act of negligence or other fault of appellant, justifying the mistake which was made in the payment of the check.—*Murphy v. Metropolitan National Bank*, 191 Mass. 159, 77 N. E. 693, 114 Am. St. Rep. 595.

It is true that the delivery by appellant of the check to Harris enabled Harris, in person or by the aid of a confederate, to commit a forgery, but appellant had the right, when he delivered Harris the check, to presume that when the check was presented for payment the bank to which it was presented would exercise those precautions with reference to the genuineness of the signature of the payee that the law in such cases requires. This the evidence altogether fails to show.—*Murphy v. Metropolitan National Bank, supra.* The stability of business requires that when a rule of law is announced it shall be adhered to in all cases covered by it, although hardships may thereby at times result; for "the known certainty of the law is the safety of all."—2 Coke upon Littleton, 395a.

5. The trial court, against the objection of appellant, permitted appellee to introduce in evidence the alleged deed from Frank Framhold to appellant. As the evidence shows, without dispute, that Frank Framhold never signed the deed, and never acknowledged it before any person, the deed and the acknowledgment were absolutely void.— *Grider v. American Freehold Mortgage Co.,* 99 Ala. 291, 12 South. 775, 42 Am. St. Rep. 58; *Chattanooga N. B. & L. Association v. Vaught,* 143 Ala. 389,

39 South. 215.   A void thing is, in legal effect, no thing, and has no effect whatever.   Words and Phrases, vol. 8, p. 7332.   We are therefore of the opinion that the court erred in permitting appellee to introduce the said deed in evidence.   It was admitted in evidence by the court for the purpose of permitting a comparison of the handwriting of the words "Frank Framhold" on the back of the check and to the signature to the deed; but we can not, as we have above stated, see how this comparison, whether favorable or unfavorable, could have been of any legitimate service to the jury in determining any of the legitimate inquiries in the case.   The check was delivered to Harris for Frank Framhold, the owner of the land, to be by Harris delivered to him.   It was not delivered to him for the purpose of enabling him, through forgery, to commit a fraud upon any person, and there is nothing in the record indicating that it was so done.

6.  The trial court also permitted some of the witnesses for appellee to testify that, in their opinion, the 160 acres of land was worth much more than $640.   The witnesses who so testified showed by their testimony, in the first place, that they had never been over the land, and were not competent to testify, on that account, to its value, and, in the second place, it mattered not to appellee, or any banker into whose hands the check came, whether appellant was paying full value for the land or not.

It therefore appears to us that the court below committed error in the trial of this case which was manifestly prejudicial to appellant, and this cause is therefore reversed and remanded.

Reversed and remanded.