### UNITED STATES v. FIRST NAT. BANK & TRUST CO. OF OKLAHOMA CITY, OKL., et al.

### No. 5386.

District Court, W. D. Oklahoma.

Dec. 10, 1936.

Wm. C. Lewis, U. S. Dist. Atty., and Wade H. Loofbourrow, Asst. U. S. Dist. Atty., both of Oklahoma City, Okl., for the United States.

C. D. Ellison, of Oklahoma City, Okl., for defendant, First Nat. Bank & Trust Co.

Reynolds & Ridings, of Oklahoma City, Okl., for defendant Jones.

VAUGHT, District Judge.

By stipulation of the parties, a trial by jury was waived and the case tried to the court. The facts as stipulated are as follows:

On December 1, 1930, Adjusted Service Certificate No. 3669740 was issued by the federal government to William M. Hutchins, a veteran of the World War and entitled to such certificate; and on June 25, 1931, the United States Veterans' Administration at Washington, D. C., mailed such adjusted compensation certificate to "William M. Hutchins" by registered letter No. 578083 at Marine Barracks, Navy Yard, Mare Island, Cal.

The letter was delivered at Mare Island Station of the Vallejo Post Office, Mare Island, Cal., by John A. Stone, superintendent of the station, on June 29, 1931, on form No. 3849, and registry return receipt on form No. 3811 was signed. Delivery of the letter was restricted to addressee only as shown by rubber stamp instructions on the two forms. The letter was not delivered to the true addressee, but to one William M. Hutcheson, who signed for such letter as "William M. Hutchins," Hutcheson not being entitled to an Adjusted Service Certificate for the reason he was not a veteran of the World War.

William M. Hutcheson, upon receipt of such certificate, mailed the same to his mother in Oklahoma City, Okl. Thereafter, he returned to Oklahoma City, presented said Adjusted Service Certificate to

the United States Veterans' Administration, made application for a loan on such certificate in the sum of $763.50, and executed an application and note therefor to the United States Veterans' Bureau at Oklahoma City, using the name "William M. Hutchins" and giving his address as 2122 S. W. 27th street, Oklahoma City. Okl. To the application was attached a certification of identification executed by R. W. Moyer, service officer, Oklahoma City Post No. 35, American Legion.

After the execution and filing of the application and the certificate of identification, a check was issued by M. L. Morris, special disbursing agent, Veterans' Administration, at Oklahoma City, on July 25, 1932, in the sum of $763.50, payable to "William M. Hutchins," and on the same date mailed to William M. Hutchins at 2122 S. W. 27th street, Oklahoma City, Okl., the address of said William M. Hutcheson, said check having been delivered by the postal authorities to Hutcheson's address to which it had been directed. William M. Hutcheson received the check, indorsed the name of the payee, William M. Hutchins, and negotiated the same to the defendant, Fred Jones, who indorsed said check and deposited it in his account at the First National Bank & Trust Company of Oklahoma City, which bank in the due course of business indorsed said check and presented same through regular banking channels to the Treasurer of the United States, who paid the same on August 1, 1932, to the First National Bank & Trust Company of Oklahoma City, Okl.

It is further admitted that William M. Hutchins, to whom said service certificate was issued, did not indorse the check and in no way authorized or directed William M. Hutcheson to indorse the name, "William M. Hutchins" on said check.

It is further stipulated that the fact that the said William M. Hutcheson was not in fact William M. Hutchins, was not known to the plaintiff, the defendants, said disbursing agent, the Treasurer of the United States, or any other official or employee of the United States, until after said check was issued and delivered to the said Hutcheson, indorsed and paid, as hereinbefore set out. Upon the discovery of the facts, as above stated, the said William M. Hutcheson was prosecuted in the United States District Court for the Western District of Oklahoma [1] on a charge of

forging and passing a government obligation, pleaded guilty and was sentenced by said court.

It is further admitted that William M. Hutcheson is insolvent and restitution of the proceeds of said check has not been made by him to any one, and that neither of the defendants has made restitution of the amount of said check to the government. Demand was made by plaintiff on the defendant, the First National Bank & Trust Company, on or about August 31, 1933, for payment of said check; on September 22, 1933, the said bank declined payment thereof and made demand on Fred Jones for payment of said check, and payment by the said Jones was refused to such bank.

Additional evidence was introduced as per stipulation by depositions, none of which, however, changes the material facts as hereinbefore set out.

The United States of America brought this action against the defendants seeking recovery of the amount paid by the government on said check.

The evidence in this case discloses that the government was imposed upon by William M. Hutcheson in that he received the Adjusted Service Certificate in California, when the government intended to deliver said certificate to William M. Hutchins. William M. Hutcheson returned to Oklahoma City and presented said certificate to the Veterans' Bureau, receiving a loan thereon, signing the name "William M. Hutchins" and giving his address in Oklahoma City as the address of William M. Hutchins.

The special disbursing agent of the government mailed the check in question to the address which Hutcheson had given to the disbursing agent as the address of William M. Hutchins. After the check was received by Hutcheson, he presented the same to Fred Jones, who was a dealer in new and used Ford automobiles in Oklahoma City, and purchased a secondhand car, receiving the remainder of the proceeds, $513.50, in the form of a check to "William M. Hutchins" signed by Fred Jones, which check was by Hutcheson indorsed "William M. Hutchins" and the proceeds thereof were utilized by Hutcheson.

The evidence further discloses that at the time the check was presented to Fred

[1] No opinion for publication.

Jones, his credit manager, before accepting the check, called the Veterans' Bureau and asked to talk with Mr. Morris, the special disbursing agent. He is not sure that he talked to Mr. Morris, but he talked with some one who talked for Mr. Morris. The credit manager further stated that he made that a practice in cashing all of the checks issued to veterans, in order to be sure of identification.

The witness further states he described the check to Mr. Morris, or the one speaking for him, and also described Mr. Hutcheson, and that Mr. Hutcheson was identified by the special disbursing agent's office as the owner of the check.

The government contends that the bank received the proceeds from said check from the United States government and therefore is liable to the government for said sum. The bank contends that it paid the money on the indorsement of Fred Jones, therefore it is entitled to recover from Fred Jones, in the event that it should be liable to the government; and both defendants contend that the government was negligent in that it failed to notify either of the defendants that said check had been received and cashed by a person other than the person entitled thereto, until on or about the 31st day of August, 1933, and that they had no notice or knowledge of such fact prior thereto.

The rule is well settled that the government, in dealing with commercial paper, would have the same rights as individuals engaged in similar transactions. Cooke et al. v. United States, 91 U.S. 389, 23 L.Ed. 237; United States v. National Exchange Bank of Baltimore (C.C.A.) 1 F.(2d) 888, affirmed 270 U.S. 527, 46 S.Ct. 388, 70 L. Ed. 717.

There can be no question but that the plaintiff "set in motion the machinery which resulted in the loss." The government actually delivered this check to William M. Hutcheson, although it intended to deliver the check to William M. Hutchins.

In 3 R.C.L. Sec. 211, p. 1002, it is said: "Where a bill or note is assignable only by indorsement, a person who obtains possession of it by a forged indorsement acquires no interest in it although ignorant of the forgery. * * * But the drawer of a check, draft, or bill of exchange, who delivers it to an impostor, supposing him to be the person whose name

he has assumed, must, as against the drawee or a bona fide holder, bear the loss, where the impostor obtains payment of or negotiates the same."

In United States v. Chase National Bank, 252 U.S. 485, 40 S.Ct. 361, 64 L. Ed. 675, 10 A.L.R. 1401, a sergeant drew a draft upon the Treasurer of the United States and forged the name of a Lieutenant Sumner, who was a quartermaster and had authority to draw such drafts, and also forged the name of Lieutenant Sumner as indorser upon the draft. The Chase National Bank in due course paid the draft and presented it to the United States Treasurer, who paid it. The government then discovered the forgery and demanded repayment from the Chase National Bank and upon its refusal to pay, brought suit. A recovery was denied, and the court, in the syllabus, states the rule as follows: "A drawee who pays a draft drawn to the drawer's order, upon which the drawer's signature, as well as his endorsement, is forged, cannot recover the money from a bona fide holder for value, guilty of no bad faith or negligence contributing to the success of the forgery."

In Grand Lodge, A. O. U. W., of Kansas v. State Bank, 92 Kan. 876, 142 P. 974, 978, L.R.A.1915B, 815, the court refers to the case of McHenry v. National Bank, 85 Ohio St. 203, 97 N.E. 395, 38 L.R.A. (N.S.) 1111, and says: "A stranger was introduced to a money lender as George Thresh who asked for a loan on a farm. On examination of the record the title to the farm was found to be in George Thresh. Later the loan was agreed upon, a mortgage was made, and a check was delivered to Thresh, payable to his order, and upon his indorsement was paid by the bank. It was afterwards discovered that the farm belonged to another George Thresh who knew nothing of the transaction. The suit was by the drawer of the check against the bank to recover the money, on the theory that it had been paid on a forged indorsement; but the action failed because the money was paid to the very person to whom the check had been delivered as payee by the drawer. The same result was reached in Land Title & Trust Co. v. Northwestern Nat. Bank, 196 Pa. 230, 46 A. 420, 50 L.R.A. 75, 79 Am.St.Rep. 717; Russell v. First Nat. Bank of Hartselle, 2 Ala.App. 342, 56 So. 868; Weisberger Co. v. Savings Bank, 84 Ohio St. 21, 95 N.E. 379, 34 L.R.A.(N.S.)

1100; James Maloney v. Clark & Co., 6 Kan. 82; National Bank v. Shotwell, 35 Kan. 360, 11 P. 141. In each of these cases the drawer of a check was misled as to the identity of the payee; but the indorsement was made by, and the money paid to, the very person to whom the check had been drawn and delivered by the drawer. In this case no such delivery had been made, and the payee was not an impostor, and his identity is not questioned. In the cases referred to the drawer made the first mistake, from which the loss resulted. Here no mistake was made; the check was intended for Cyrus Thompson. The fact that the grand lodge had been fraudulently induced to write it does not affect the legal rights of the bank."

In United States v. National Exchange Bank, 45 F. 163, 167, the United States Circuit Court, Eastern District of Wisconsin, said: "Allowing the drawer and drawee to be equally innocent, the loss should fall upon that one who, by his act, has been the occasion of the loss, which in this case, I think, was the department. Though there may have been no express negligence on the part of the officials of the post-office, it was a mistake to deliver the check to a person not entitled to it, and that mistake has been the occasion of the loss."

In Maslin v. Columbian Nat. Life Ins. Co. (D.C.) 3 F.Supp. 368, 370, District Judge Patterson of the Southern District of New York, said: "It is a rule applicable to contracts generally that where a man, pretending to be some one else, goes in person to another and induces him to make a contract, the resulting contract is with the person actually seen and dealt with and not with the person whose name was used." (Citing a long line of authorities.)

The court, therefore, is clearly of the opinion that the government should not prevail in this action.

Another phase of the case, which in view of the indicated opinion of the court may not be material, will be briefly considered. This check in question was issued on the 25th day of July, 1932, and was paid by the Treasurer of the United States on August 1, 1932. No demand was ever made upon the bank or defendant Jones, through the bank, until August 31, 1933, practically thirteen months thereafter.

In United States v. National Exchange Bank, supra, the United States Circuit Court, Eastern District of Wisconsin, said: "There is, I think, another reason why the plaintiff should not recover. The department waited over a month, from about March 11th to April 17th, after having notice of the forgery, before returning the check to the bank, or giving any notice of its intention to hold the bank liable. This was, within all the cases, an unreasonable time to wait. The notice should have been given without unnecessary delay after discovery of the fraud, to enable the bank to pursue any remedy it might have against the forger or indorsers. It is no doubt true that full knowledge of the forgery may not have been in possession of the government until the coming in of the special agent's report. But it was apprised of the fraud before March 15th, and knew substantially all that was afterwards reported of it by the agent. It certainly knew enough of it to put it upon inquiry. It is urged in answer to this objection that the defendant also had notice of the fraud about the same time. But that was not enough. The government did not repay the money until July, and the bank could not assume, without the return of the check and demand of payment, that the government intended to pay, or to hold the bank responsible." (Citing Cooke v. United States, 91 U.S. 389, 398, 23 L. Ed. 237, and other cases.)

The stipulation is silent as to the time the government actually discovered that deception had been practiced upon it. However, thirteen months is an extremely long time in which to make the demand which was made in this case.

The court finds generally for the defendants. Counsel may submit findings of fact and conclusions of law consistent with this opinion. An exception is allowed the plaintiff.